**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| MAURICE SMITH, JEAN PAUL BRICAULT JR, and JOSE TORRES ROSADO, on behalf of themselves and all others similarly situated, | ) )  )  )  ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CRST EXPEDITED, INC. and CRST INTERNATIONAL, INC., | ) ) ) |
| Defendants. | ) ) |

**JURY DEMANDED**

Civil Action No.

_____ )

## CLASS AND COLLECTIVE ACTION COMPLAINT

## I.    INTRODUCTION

1.    This is an action brought on behalf of individuals who have worked for Defendants CRST Expedited, Inc. and CRST International, Inc. as drivers and have suffered from the unlawful practices described herein.

2.    First, Defendants have imposed an unenforceable non-competition provision on drivers and have enforced their non-competition provision against drivers in contravention of the non-competition provision's own terms, in violation of the Iowa Consumer Frauds Act, Iowa Code § 714H, and the common law of Iowa and/or the several states.

3.    Second, drivers not been paid all wages that they are owed and have had unlawful deductions taken from their pay, in violation of the federal Fair Labor Standards Act (FLSA).

1

4.     Third, drivers have been required to attend several days of orientation for which they have not been paid, in violation of the FLSA and the Iowa wage laws.

5.     Named Plaintiffs Maurice Smith, Jean Paul Bricault Jr, and Jose Torres Rosado bring this action on behalf of themselves and all other similarly situated individuals and seeks an injunction, declaratory relief, and monetary damages (including all available compensatory damages, and liquidated, multiple, and/or punitive damages and any other relief available) relating to CRST's unlawful enforcement of the non-competition provision and recovery of all unpaid wages and unlawful deductions.  Plaintiffs also seek liquidated damages, interest, costs and attorneys' fees under the FLSA and the Iowa wage laws, as well as all other relief to which they are entitled.

## II.     PARTIES

6.     Plaintiff Maurice Smith is an adult resident of Lithonia, Georgia. He worked as a truck driver for Defendants from approximately March 2015 until August 2015.  He is an "employee" of Defendants within the meaning of the FLSA and the Iowa wage laws.

7.     Plaintiff Jean Paul Bricault Jr is an adult resident of Worcester, Massachusetts. He worked as a truck driver for Defendants from approximately June 2014 to August 2014.  He is an "employee" of Defendants within the meaning of the FLSA and the Iowa wage laws.

8.     Plaintiff Jose Torres Rosado is an adult resident of Allentown, Pennsylvania. He worked as a truck driver for Defendants from approximately April

2019 until May 2019. He is an "employee" of Defendants within the meaning of the FLSA and the Iowa wage laws.

9.      The above-named Plaintiffs bring this action on behalf of themselves and all others similarly situated, namely all other individuals who have worked as drivers for Defendants and have been subject to Defendants' unlawful enforcement of the non-competition provision and/or have not received all wages to which they are entitled, as described below.

10.      For the claims relating to Defendants' unlawful enforcement of the non-competition provision, Plaintiffs bring this action on behalf of all similarly situated individuals pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. The proposed class for these claims meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

11.      For the FLSA claims, Plaintiffs bring this action on behalf of all similarly situated individuals who may "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b). The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

12.      The Plaintiffs and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

13.      Pursuant to 29 U.S.C. § 216(b), Named Plaintiff Jose Torres Rosado consents to sue as a plaintiff under the Fair Labor Standards Act. His consent to sue form is attached hereto as Exhibit 1.

14.     For the Iowa wage law claims, Plaintiffs bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class for these claims meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

15.     Defendant CRST Expedited, Inc. is an Iowa corporation that employs individuals (including the Named Plaintiffs) as drivers.  Defendant CRST Expedited, Inc. has revenues in excess of $500,000 per year and has employed two or more persons, including the Named Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.  Defendant CRST Expedited, Inc. is an "employer" of the Named Plaintiffs and other similarly situated drivers within the meaning of the FLSA and the Iowa wage laws.

16.     Defendant CRST International, Inc. is an Iowa corporation that employs individuals (including the Named Plaintiffs) as drivers.  Defendant CRST International, Inc. has revenues in excess of $500,000 per year and has employed two or more persons, including the Named Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.  The Defendant CRST International, Inc. is an "employer" of the Named Plaintiffs and other similarly situated drivers within the meaning of the FLSA and the Iowa wage laws.

## III.    JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States.  Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

18.     Plaintiff requests that this Court exercise supplemental jurisdiction over their claims under the common law and the Iowa consumer fraud and wage laws pursuant to 28 U.S.C. § 1367.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in the Commonwealth of Massachusetts for venue purposes and/or are subject to the Court's personal jurisdiction in that they have substantial contacts with and conducts business in the Commonwealth of Massachusetts.

## IV.    FACTS

### A.    Facts relating to Defendants' corporate structure

20.     CRST Expedited Inc. and CRST International, Inc. are "brother/sister" companies that are owned by a holding company called Admiralty Holdings.

21.     CRST International, Inc. is a "shared services company," which provides management services to other CRST companies, including CRST Expedited, Inc.

22.     CRST International, Inc. provides management oversight, legal, accounting, treasury, risk management, human resources, and safety oversight services to CRST Expedited, Inc.

23.     CRST International, Inc. is involved in decisionmaking relating to wage payment policies and payroll as to drivers for CRST Expedited, Inc.

24.     CRST International, Inc. is involved in decisionmaking relating to the amounts charged to CRST Expedited, Inc. drivers for driver training, transportation, lodging, and other expenses and relating to debt collection.

25.     CRST International, Inc.'s collections department handles debt collection for CRST Expedited, Inc.

**B.     Facts relating to Defendants' unlawful non-competition provision.**

26.     CRST recruits a steady supply of team drivers to fuel its expedited transportation services by means of its Driver Training Program, whereby CRST offers to pay for an individual to obtain a commercial driver's license ("CDL") in exchange for driving for CRST for ten months.

27.     CRST recruiters aggressively recruit new drivers using techniques designed to commit applicants to participation in the Driver Training Program; for example, recruiters book one-way Greyhound bus tickets or arrange other transportation for applicants to attend the first phase of training ("Phase 1" or "truck driving school") – sometimes after a single conversation with the applicant about the program.

28.     Maurice Smith took a Greyhound bus, booked by his recruiter, from Salisbury, Maryland to Cedar Rapids, Iowa to start Phase 1 of CRST's Driver Training Program.

29.     Jean Paul Bricault Jr took a Greyhound bus, booked by his recruiter, from Sturbridge, Massachusetts to Cedar Rapids, Iowa to start Phase 1 of CRST's Driver Training Program.

30.     Jose Torres Rosado took a Greyhound bus, booked by his recruiter, from Providence, Rhode Island to Denver, Colorado to start Phase 1 of CRST's Driver Graining Program at Careers Worldwide in Keensburg, Colorado.

31.     Upon arrival at truck driving school, drivers are required to sign a Pre-Employment Driver Training Agreement.  *See* Exhibit 2.

32.     Mr. Smith was presented with the Pre-Employment Driver Training Agreement and given between five and ten minutes to read and sign the Agreement as part of a large group of approximately 50 people upon his arrival in Cedar Rapids, Iowa.

33.     Immediately after arriving in Cedar Rapids, Mr. Bricault was taken to a classroom with between 40 and 50 other people to sign a stack of paperwork, including the Pre-Employment Driver Training Agreement.

34.     Mr. Torres Rosado remembers being presented with paperwork to sign upon his arrival at Careers Worldwide, but he did not know what the paperwork was because it was entirely in English.

35.     Mr. Torres Rosado asked if the paperwork was available in Spanish and was told that all documents needed to be in English.

36.     The Pre-Employment Driver Training Agreement governs the terms and conditions of the DTP until a Driver Employment Contract is executed, "at which time the terms and conditions of the Driver Employment Contract will govern the DTP."

37.     The Pre-Employment Driver Training Agreement is an adhesion contract which is drafted by Defendants and presented to drivers on a take-it-or-leave it basis, with no opportunity to negotiate its terms.

38.     The Pre-Employment Driver Training Agreement provides that, if the driver "withdraws from the [Driver Training Program] or orientation prior to

7

commencing Phase 3, then Student will owe and must pay to CRST the entire amount of CRST's advances," which, according to the contract, "will equal or exceed the sum of $2,000." Exhibit 2, ¶¶ 12.a, 12.b.

39.     The Pre-Employment Driver Training Agreement imposes a non-competition provision of an indefinite term on drivers; indeed, the provision has no time restriction and may never end.

40.     Specifically, the provision states: "unless and until Student has repaid all amounts owed under this Agreement, Student will neither seek nor accept any work, as an employee, independent contractor, or otherwise, from any motor carrier other than CRST." Exhibit 2, ¶ 11.b.

41.     The provision goes on to state: "Students shall provide CRST with tax returns and other information requested by CRST from time to time to certify that Student is in compliance with this covenant." *Id*.

42.     Although the Pre-Employment Driver Training Agreement describes other material terms of the Driver Employment Contract, which students will be required to sign, it does not disclose the fact that the Driver Employment Contract contains a non-competition provision.

43.     The Pre-Employment Driver Training Agreement does not disclose the fact that the Driver Employment Contract contains a forum-selection clause.

44.     Drivers are first presented with and required to sign the Driver Employment Contract on the last day of truck-driving school or shortly after (during Phase 2 orientation).

45.     In all states other than California and Oklahoma, Defendants' Driver Employment Contract contains a "Non-Competition Restrictive Covenant."  Driver Employment Contract, attached as Exhibit 3, ¶ 5.

46.      The provision prohibits drivers from "directly or indirectly provid[ing] truck driving services to any CRST Competitor within the continental United States of America."  *Id*.

47.     By the terms of the contract, this non-competition provision is in effect for the length of the ten-month term of employment, unless the driver pays off the full amount of the debt before the term is over.  *Id*., ¶¶ 3, 5.b.

48.     The non-competition provision of the Driver Employment Contract is not disclosed to drivers until they have already completed truck-driving school and incurred at least $6,500 in debt to Defendants.

49.     The Driver Employment Contract is an adhesion contract which is drafted by Defendants and presented to drivers on a take-it-or-leave it basis, with no opportunity to negotiate its terms.

50.     If drivers do not sign the Driver Employment Contract, then they immediately owe Defendants at least $2,000.

51.     If drivers do not sign the Driver Employment Contract, then, pursuant to the terms of the Pre-employment Driver Training Agreement, they are barred for life from driving for another carrier unless they pay off their debt in full to Defendants.

52.     If drivers do not sign the Driver Employment Contract, then they are required to arrange and pay for their own transportation to return home.

53.     If Mr. Bricault had chosen not to sign the Driver Employment Contract, he would have been stranded in Cedar Rapids, Iowa, because he did not have any funds with which to purchase a ticket to return to Massachusetts.

54.     Defendants seek to enforce the non-competition provision and block drivers from obtaining employment at other trucking companies in several ways.

55.     First, for example, Defendants aggressively litigate against trucking companies that hire drivers who Defendants claim are still under contract with CRST. It has filed four such cases in the United States District Court for the Northern District of Iowa in the past four years.  *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, N.D. Iowa Civil Action No. 1:16-cv-00052; *CRST Expedited, Inc. v. Knight Transportation, Inc.*, N.D. Iowa Civil Action No. 1:17-cv-00024; *CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*, N.D. Iowa Civil Action No. 1:17-cv-00025; *CRST Expedited, Inc. v. J.B. Hunt Transportation, Inc.*, N.D. Iowa Civil Action No. 1:17-cv-00026.  These cases have alleged that the other trucking companies have caused CRST drivers to breach the non-competition provisions of their contracts, and CRST has sought, *inter alia*, entry of a permanent injunction preventing the companies from hiring drivers under contract with CRST.  *Id*. (Dkt. Nos. 1 (Complaint)).

56.     Second, when a potential employer contacts Defendants, Defendants inform the employer by letter that the driver is still under contract with CRST, resulting in the potential employer not hiring the driver.

57.     These letters state that the individual is "currently under a contract with CRST" and state that "CRST is not releasing this driver from his or her contractual commitment."  Exhibit 4, letter from CRST to potential employer.

58.     The letters further suggest that the company may be subject to legal action by CRST if they hire drivers subject to CRST's non-competition provision.  *Id.*

59.     Specifically, the letters reference a 2006 preliminary injunction obtained by CRST against J.B. Hunt:

> In February 2006, the United States District Court for the Western District of Oklahoma held that CRST's contracts with its newly trained drivers are valid and enforceable and justified a preliminary injunction that prohibited J. B. Hunt from hiring any CRST contract driver to begin work before the expiration of the driver's contract term. We hope to avoid any dispute of this sort with your company.

*See* Exhibit 5, Preliminary Injunction.

60.     The 2006 preliminary injunction enjoins J.B. Hunt from attempting to hire employ CRST drivers on a date that is prior to the "termination of a contractual term of employment with CRST."  The order defines "Contractual term of employment" to mean "a period of employment specified in a written agreement between the driver and CRST."

61.     Third, Defendants place information on drivers' employment history reports (called "DAC reports"), which are requested by prospective employers in the trucking industry before they hire drivers, indicating that the drivers are still under contract with CRST, which prevents them from being hired by other trucking companies.

11

62.     These are some of the examples of ways in which Defendants aggressively enforce the non-competition provision.

63.     Defendants have routinely sought to enforce the non-competition provision in the Driver Employment Contract against drivers in contravention of that provision's own terms.

64.     The provision states that it remains in effect for the "Term," which is defined in the contract as the ten-month term of employment commencing with the effective date of the contract.

65.     Under this language, Defendants should not seek to enforce the non-competition provision beyond that ten-month time period, even if the drivers have not paid off their entire debt to CRST.

66.     However, in practice, Defendants routinely bind drivers to the non-competition provision even after the conclusion of the ten-month contract term.

67.     For example, Defendants have communicated to drivers and prospective employers in the trucking industry—both orally and in writing—that drivers are "under contract" to CRST, accompanied by references to the 2006 preliminary injunction, long after the expiration of the ten-month term.

68.     Exhibit 4, a letter from CRST to a potential employer, concerns the potential employment by TruckMovers of Plaintiff Maurice Smith.  The letter is dated August 17, 2018, *more than three years* after the effective date of Mr. Smith's Driver Employment Contract with CRST of April 3, 2015 and *more than two years and eight months* after the expiration on December 3, 2015 of his term of employment.

69.     Additionally, these actions by Defendants to block employment by their former drivers long after the ten-month term of the contract are part of a coordinated "carrot-and-stick" strategy to threaten and induce drivers to return to work for CRST.

70.     For example, Defendants' standard collections letters state that "[t]here are two ways avoid further collection efforts on this debt: 1) Return to work for CRST and fulfill the remaining terms of your contract.  Call the rehire group at 866-706-5647. OR 2) Make payment in full." *See* Exhibit 5.

71.     The following acts and omissions by Defendants constitute prohibited practices or acts under the Iowa Consumer Frauds Act:

    a.  Defendants' imposition of a non-competition provision with no time limitation in the Pre-Employment Driver Training Agreement;

    b.  Defendants' failure to inform drivers during the pre-employment period that they will become bound by a non-competition provision upon executing a Driver Employment Contract with Defendants;

    c.  Defendants' failure to inform drivers prior to execution of the Driver Employment Contract that they may seek to enforce the non-competition provision beyond its ten-month term;

    d.  Defendants' efforts to enforce the non-competition provision beyond its ten-month term;

    e.  Defendants' deceptive and misleading representations to potential employers, drivers, and others that CRST has the legal right to enforce the non-competition provision beyond its ten-month term by deliberate use of

the ambiguous phrase "under contract" when drivers merely owe an alleged debt to CRST; and

    f.    Defendants' deceptive and misleading representations to potential employers, driers, and others that CRST has the legal right to enforce the non-competition provision beyond its ten-month term in order to induce drivers to return to work for Defendants and/or to pay off their tuition "debt" and/or other monies Defendants assert drivers owe to them;

72.    Drivers have suffered ascertainable loss as a result of Defendants' actions, *inter alia*, in the form of lost employment opportunities, lost employment income, damages associated with payments made toward their alleged "debt" to Defendants that they might not have otherwise paid, and performance of forced labor for Defendants by returning to work for Defendants as a result of their unlawful enforcement and/or threatened enforcement of the non-competition provision.

73.    Defendants' actions have been willful and/or in wanton disregard for the rights of the drivers.

74.    The non-competition provision in the Pre-Employment Driver Training Agreement, including its lack of any time limit, is not reasonably necessary for the protection of Defendants' business.

75.    The non-competition provision in the Pre-Employment Driver Training Agreement, including its lack of any time limit, is unreasonably restrictive of drivers' rights.

76.     The non-competition provision in the Pre-Employment Driver Training Agreement, including its lack of any time limit, is prejudicial to the public interest.

77.     The non-competition provision in the Pre-Employment Driver Training Agreement is unenforceable.

78.     Drivers have suffered damages from Defendants' enforcement of the non-competition provision in the Pre-Employment Driver Training Agreement.

79.     Defendants' efforts to enforce the non-competition provision beyond the ten-month term constitute a breach of the Driver Employment Agreement and a breach of the contractual relationship between Defendants and the drivers.

80.     Drivers have suffered damages from Defendants' breach of contract.

81.     The harm to drivers from Defendants' unlawful invocation of the non-competition provisions beyond the ten-month term is patent.  Many drivers have missed out on job opportunities and suffered income loss as a result.  Drivers have suffered significant financial and other economic and non-economic hardship because of the inability to get another job in the trucking industry.

82.     Defendants' efforts to enforce the non-competition provision beyond the ten-month term also constitute tortious interference with prospective business relations and/or advantages.

83.     Drivers have had prospective employment relationships with other trucking companies.

84.     Defendants have known of those prospective employment relationships.

85.     Defendants have intentionally and improperly interfered with those relationships by attempting to enforce the non-competition provisions beyond the ten-month term.

86.     Defendants' interference has caused trucking companies not to hire drivers.

87.     Defendants' interference has caused harm and damages to the drivers in the form of lost job opportunities, lost income, and other foregone opportunities.

**C.     Facts relating to unpaid wages and unlawful wage deductions**

88.     Defendants hired the Named Plaintiffs and other similarly situated drivers to transport goods in interstate commerce.

89.     During all times relevant to this action, the Named Plaintiffs and all others similarly situated were employed by the Defendants in an "enterprise engaged in commerce or in the production of goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

90.     During all times relevant to this action, the Named Plaintiffs and all others similarly situated were employed by the Defendants for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person.

91.     The Named Plaintiffs and all others similarly situated rendered employment-related services for Defendants in the state of Iowa for wages.

92.     Defendants have not paid the Named Plaintiffs and other similarly situated individuals all wages owed to them.

93.     Defendants require their drivers to complete what they call a "Driver Training Program."

94.     The Driver Training Program has four phases.  Phase 1 consists of driver training at a truck driving school; Phase 2 is CRST's orientation program; Phase 3 is over-the-road driver training with a lead driver; and Phase 4 includes classroom training, mentoring, etc.

### 1.     Unpaid orientation

95.     Defendants' orientation program (Phase 2) typically lasts approximately two to four days and is conducted in various locations around the country including Iowa, Florida, Oklahoma, and California.

96.     Defendants do not pay individuals wages for attending this orientation.

97.     For example, Plaintiffs Maurice Smith, Jean Paul Bricault Jr, and Jose Torres Rosado each attended Defendants' orientation for multiple days at CRST's facilities in Cedar Rapids, Iowa and were not paid any wages for attending orientation.

98.     Other individuals similarly have attended several days of unpaid orientation for Defendants.

99.     These individuals are employees of Defendants during orientation.

100.    Drivers typically sign employment contracts with Defendants before or during orientation.

101.    The orientation program is conducted by Defendants' employees and uses materials developed by Defendants.

102.    The substance of the orientation program includes learning about and being trained on Defendants' policies and procedures.

103.    Defendants' driver employment handbook is distributed to drivers at orientation.

104.    Drivers complete new-hire paperwork for Defendants at orientation.

105.    Orientation also includes a skills assessment, a mandatory pre-employment drug screen, and a mandatory physical.

106.    On the last half-day of orientation, the drivers get their employee IDs, meet with their managers, get briefed on operations, and typically receive their initial driving assignments.

107.    Much of the time spent in orientation is considered "on-duty" time for DOT purposes, including all time relating to drug tests and attending trainings relating to safety, which is much of what is covered during orientation.

108.    The drivers are expected to continue working for Defendants as truck drivers after completion of orientation.

109.    The orientation primarily benefits Defendants, *inter alia*, because it prepares drivers to begin driving trucks for Defendants, trains them in Defendants' specific policies and procedures, introduces them to important managerial employees, and assigns them their initial driving jobs, etc.

110.    Under the FLSA and under the Iowa wage laws as to drivers who have attended orientation in Iowa, Defendants are required to pay the Named Plaintiffs and other employees wages for all work they perform.

111.    Defendants' failure to pay employees wages for orientation constitutes a willful, reckless, and intentional violation of the FLSA and the Iowa wage laws.

### 2.    Minimum wage violations for truck driving

112.    During Phase 3, drivers work with another driver, performing work for Defendant including driving, helping the other driver, loading and unloading the truck, etc.

113.    During Phase 3 and Phase 4, drivers are paid a rate per mile for time when they are driving but are not paid for time when the truck is not moving, including loading and unloading time, and are not paid for time when the other driver is driving the truck.

114.    Drivers are not paid for sleeper berth time and other "off-duty" time, even when that time exceeds eight hours and even when the drivers have not been working for more than twenty-four hours.

115.    Drivers are not paid for short breaks of twenty minutes or less.

116.    As a result of Defendants' pay practices, drivers are often paid less than the federal minimum wage for all hours worked.

117.    Defendants also makes deductions from their drivers' paychecks for improper and invalid purposes.

118.    For example, Defendants make deductions from drivers' wages for drug tests and physical screenings.

119.    Defendants make deductions from drivers' wages for tools of the trade and supplies for the job, including a "map pack."

120.     Defendants make deductions from drivers' wages for wire charges.

121.     Defendants make deductions from drivers' wages for the costs of transportation, housing, and meals that are for the benefit of the employer, are in excess of the actual or reasonable cost to Defendants for this transportation, housing, and meals, and/or are otherwise unlawful.

122.     Defendants make deductions from drivers' final paychecks for the purported cost of truck driving school tuition (in an amount in excess of the amount Defendants have paid the truck driving school) and other costs associated with drivers' training.

123.     The deductions Defendants make from drivers' wages often reduce drivers' earnings below minimum wage.

124.     The deductions also constitute unlawful kickbacks to Defendants.

125.     Defendants' deductions relating to furnishing board, lodging and/or other facilities exceed any reasonable and/or actual cost to Defendants of providing those facilities.

126.     Defendants' deductions are not allowable under the FLSA and its regulations.

127.     Defendants' violations of the FLSA, as described herein, are willful and in reckless disregard for their employees' rights under the FLSA.

## V.     RULE 23 CLASS ACTION ALLEGATIONS RELATING TO UNLAWFUL ENFORCEMENT OF NON-COMPETITION PROVISION

128.     Plaintiffs Maurice Smith, Jean Paul Bricault Jr,  and Jose Torres Rosado assert their claims relating to Defendants' unlawful enforcement of the non-competition

provisions on behalf of themselves and a putative class under Fed. R. Civ. P. 23, specifically Rule 23(a), 23(b)(2), and/or 23(b)(3).

129.    Pending any modifications necessitated by discovery, the Named Plaintiffs preliminarily define the following class:

ALL INDIVIDUALS WHO HAVE SIGNED CONTRACTS WITH CRST WITH A NON-COMPETITION PROVISION.

130.    All potential Rule 23 plaintiffs are similarly situated with respect to these claims because they were all drivers for Defendants and all suffered from the same unlawful practices, namely the potential or actual enforcement of the non-competition provision beyond the ten-month term and Defendants' failure to disclose this practice, resulting in lost employment opportunities and economic loss, *inter alia*.

131.    The members of the class are so numerous that joinder of all of them is impracticable.  More than 25,000 individuals are subject to Defendants' non-competition provision.

132.    There are issues of law and fact common to all class members, because Defendants' practices regarding the non-competition provisions apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

133.    The claims of the Named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

134.    The Named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

135.    Defendants have acted or refused to act on grounds that apply generally to the class.

136.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the Named Plaintiffs as well as every absent member of the proposed class.

137.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges a uniform non-competition provision that applies to tens of thousands of individuals; many drivers may be reluctant to bring claims individually for fear of retaliation; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

138.    PARAGRAPH TO BE INSERTED:  The Named Plaintiffs and their counsel have sought approval from the Iowa Attorney General's office to bring this claim pursuant to Iowa Code § 714H.7. . .

V.    FLSA COLLECTIVE ACTION ALLEGATIONS

139.    Plaintiff Jose Torres Rosado asserts his claims under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

140.    Pending any modifications necessitated by discovery, the Named Plaintiff preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

ALL INDIVIDUALS WHO HAVE PARTICIPATED AS CONTRACT DRIVERS IN ANY PHASE OF CRST'S DRIVER TRAINING PROGRAM DURING THE APPLICABLE STATUTORY PERIOD.

141.     These claims meet the requirements for collective action certification under the FLSA.

142.     All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they were all employees of Defendants and all suffered from the same unlawful policies, including:

    a.   They attended unpaid orientation;

    b.   They were paid by the mile without regard to the number of hours worked (and were not paid at all for some work);

    c.   They were not paid for sleeper berth time in excess of eight hours per day;

    d.   They were not paid for short breaks of twenty minutes or less; and

    e.   They had numerous deductions taken from their paychecks.

## V.     RULE 23 CLASS ACTION ALLEGATIONS RELATING TO UNPAID ORIENTATION IN IOWA.

143.     Named Plaintiff Jose Torres Rosado asserts the Iowa wage law claims on behalf of a class pursuant to Fed. R. Civ. P. 23.

144.     Pending any modifications necessitated by discovery, the Named Plaintiff preliminarily defines the following class:

ALL INDIVIDUALS WHO HAVE ATTENDED UNPAID ORIENTATION IN IOWA.

145.    All potential Rule 23 plaintiffs are similarly situated with respect to the Iowa wage law claims because they all suffered from the same unlawful policies and practices, including:

    a.   They were required to attend a multi-day orientation in Iowa;

    b.   They were not paid for orientation time; and

    c.   The orientation focused on CRST policies and benefited CRST.

146.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds several hundred.

147.    There are issues of law and fact common to all class members, because Defendants' wage payment practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

148.    The claims of the Named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

149.    The Named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

150.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the Named Plaintiffs as well as every absent member of the proposed class.

151.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform wage payment and deduction practices; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

## COUNT I – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT

Defendants' conduct, as set forth above, violates the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.1, *et seq*.  Through the actions described above, Defendants have violated the provisions of Iowa Code § 714H.3.  This claim is brought on behalf of the Named Plaintiffs and all other similarly situated individuals pursuant to Iowa Code § 714H.5.

## COUNT II – BREACH OF CONTRACT

Defendants' conduct, as set forth above, constitutes breach of contract, in violation of the common law of Iowa and/or the several states. This claim is brought on behalf of the Named Plaintiffs and all other similarly situated individuals.

## COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AND/OR ADVANTAGES

Defendants' conduct, as set forth above, constitutes tortious interference with prospective business relations and/or advantages, in violation of the common law of Iowa and/or the several states. This claim is brought on behalf of the Named Plaintiffs and all other similarly situated individuals.

## COUNT IV – UNLAWFUL NON-COMPETITION PROVISION

Defendants' non-competition provision in the Pre-Employment Driver Training Agreement violates the common law of Iowa and/or the several states. This claim is brought on behalf of the Named Plaintiffs and all other similarly situated individuals.

## COUNT V – FAIR LABOR STANDARDS ACT (FLSA)

Defendants' conduct, in failing to pay its drivers at least minimum wage for all hours worked, in taking unlawful deductions from drivers' pay, and in failing to pay wages free and clear, violates the FLSA, 29 U.S.C. § 201, et seq.  This claim is brought on behalf of the Named Plaintiff and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT VI – IOWA WAGE LAWS

Defendants' conduct, in intentionally failing to pay their drivers at least the applicable statutory minimum wage for all hours worked in orientation attended in Iowa, violates the Iowa wage laws, namely the Iowa Wage Payment Collection Law (IWPCL), Iowa Code § 91A. 1, *et seq*. and the Iowa minimum wage law, Iowa Code § 91D.1.  This claim is brought on behalf of the Named Plaintiffs and all other similarly situated individuals pursuant to the IWPCL, Iowa Code § 91A. 1, *et seq*., the Iowa minimum wage law, Iowa Code § 91D.1, and Iowa Admin. Code § 875-35.2(91A).

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury for all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter the following

relief:

a.      Certification of the claims relating to Defendants' unlawful enforcement of the non-competition provision as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2) and/or 23(b)(3);

b.      Certification of an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, et seq.;

c.      Permission for Plaintiffs to notify fellow employees of their right to opt in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

d.      Certification of the Iowa state law wage claims as a class action under Fed. R. Civ. P. 23;

e.      An injunction preventing Defendants from taking any action to attempt to enforce the non-competition provision beyond the ten-month term, regardless of whether or not the driver has paid their "debt" to Defendants, or otherwise seeking to enforce the non-competition provision in violation of its terms;

f.      A declaration that the non-competition provision in the Pre-Employment Driver Training Agreement is unenforceable;

g.      A declaration that Defendants may not take any action to attempt to enforce the non-competition provision beyond the ten-month term;

h.      An award of damages to compensate drivers for the damages and other harm to them from Defendants' unlawful enforcement of the non-competition provision;

i.      A finding that the Defendants' violation of the Iowa Private Right of Action for Consumer Fraud Act has been willful and that, therefore, the Named Plaintiffs and all similarly situated employees are entitled to up to treble damages in addition to damages awarded;

j.      An award of damages for all minimum wages, wrongfully withheld deductions, and other unpaid wages that are due to the Named Plaintiffs and all similarly situated employees under the FLSA;

k.      Statutory liquidated damages under the FLSA;

l.      A finding that Defendants' violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

m.      An award of damages for all unpaid minimum wages that are due to the Named Plaintiffs and all similarly situated employees under the Iowa wage laws;

n.      A finding that Defendants' violation of the Iowa wage laws was intentional and that, therefore, the Named Plaintiffs and all similarly situated employees are entitled to statutory liquidated damages under the Iowa wage laws;

o.      Statutory liquidated damages under the Iowa wage laws;

p.      Attorneys' fees and costs;

q.      Pre- and post-judgment interest; and

r.      Any other relief to which the Named Plaintiffs and similarly situated employees may be entitled.

Respectfully submitted,

MAURICE SMITH, JEAN PAUL BRICAULT
JR, and JOSE TORRES ROSADO, on behalf of
themselves and all others similarly situated,

By their attorneys,


/s/ _____
Hillary Schwab, BBO #666029
Rachel Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com


Dated: July __, 2020